[Sheed *v.* Wartman.]

# Isabella Sheed *against* George Wartman.

Qu. Whether a justice of the peace can proceed to judgment and execution in case of rent exceeding 20l. and not exceeding 17l. 10s. under the act of 28 March 1804.

A HABEAS *corpus ad subjiciendum* under the act of 1785, issued to James Rolph, the keeper of the debtor's apartment, to bring up the body of the defendant before the court. He returned, that he detained him in custody, by virtue of an execution issued by Joseph Cowperthwaite, esq., a justice of the peace, for a debt of 29l. 10s., interest thereon 3l. 3s., and 15s. 6d., costs. The nature of the debt was not specified in the execution, but it appeared by a transcript from the justice's docket, that on the 8th September 1804, a summons issued against the defendant to appear on the 14th, on which day judgment was entered against him for 29l. 10s. for rent; that on the 1st October an execution issued against him; on the 16th May 1805, an *alias* issued, and on the 2d August following, a *pluries* issued, on which the defendant was taken in custody.

Mr. Meredith for the defendant excepted against the jurisdiction of justices of the peace, in cases of rent exceeding 53⅓ dollars. In common language debt and rent are different things. By the 2d section of the act of 1st March 1799, the powers of the justices were expressly extended "to all cases of rent, not "exceeding the sum of 53⅓ dollars; and the justice before whom "any suit was commenced for the recovery of rent, had thereby "an authority to admit a defalcation or set off of the just ac- "count of the tenant out of the same, and the landlord might "prosecute the said suit to judgment and execution, as in other *238] "cases, or if *he think proper, might waive further pro- "ceedings before the said justice, and distrain in the "usual manner for the balance so settled, &c." (4 St. Laws, 352.) This law by § 8, was declared to be in force for two years, and until the end of the next session of general assembly. A bill to revive this act and make it perpetual, was disapproved of by the governor, but it was passed by two thirds of the house of representatives on the 22d December 1803, and of the senate, on the 2d January 1804. (6 St. Laws, 3, 4.)

The one hundred dollars act (6 St. Laws, 383) does not repeal the law of 1st March 1799, as will be seen by reference to § 20, which specifies the laws thereby repealed.

The words of the 1st section though general do not include rents *ex nomine;* demands for damages on assumptions, accounts, and promises; demands of debts, bonds penal and single bills, refer to matters of a personal and not of a real nature: they are explained by the subsequent clauses.

The difficulty of the principal case arises out of § 12, which it must be confessed is very obscurely worded, if it was intend-

[Sheed v. Wartman.]

ed to confer a summary jurisdiction in the case of rents to the amount of $100.

It is expressed "that the powers of the said justices of the "peace, shall extend to all cases of rent, not exceeding $100, "so far as to compel the landlord to defalcate or set off the just "account of the tenant out of the same ; but the landlord may "waive further proceedings before the justice, and pursue the "method of distress in the usual manner for the balance so "settled. No appeal shall lie in the case of rent ; but the rem-"edy by replevin shall remain as heretofore."

It would seem, that the intention of the legislature was to confine the settlement of the rent due to the landlord, after deducting the set offs of the tenant, to the jurisdiction of the justice ; but that he shall proceed no further. Else why are the words *so far* introduced? Why is the penalty inflicted for the landlord's distraining and selling more, than to the amount of such balance? Why is there to be no appeal in the case of rent, contradistinguished from other cases? Why is the sole remedy to be by replevin?

The difference of expression between the laws of 1st March 1799, and 28th March 1804, cannot otherwise be reasonably accounted for. The former came into new life by the act of the senate on the 2d January 1804, and the latter became a law within three months afterwards. When it was meant by the former law to extend the jurisdiction of justices of the peace to 20l. the power is conferred by express words ; they are enabled to settle the balance by admitting of set offs ; and landlords *may proceed to judgment and execution before them, or use the alternative of distress. The power of appealing [*239 is reserved to the parties by the 3d §, in all cases where by that act the powers of the justices were extended. Such provisions do not occur in the last act : the justice's powers go to a certain length, in cases of rent, and there stop : no appeal is given : it seems morally impossible to reconcile the two laws, unless our construction is adopted.

Mr. M'Kean for the plaintiff admitted that the law under consideration was worded inartificially, but insisted, that the intention of the legislature might be extracted therefrom. Subsequent laws varying the provisions of former acts, thereby abrogate them without any express words of repeal. The meaning of a law is to be taken from every clause and word in it ; and the technical meaning of expressions applied to a science, must be supposed to have been contemplated by the legislature, not· the sense in which they are used in vulgar language.

The law in question is entitled, "an act for the recovery of "debts and demands not exceeding 100 dollars, before a justice "of the peace." The 1st section "extends the power of the "justices of the peace to all cases of demands for damages on "assumptions ; also notes, book debts, accounts, and promises, of

4 YEATES—15

[*Sheed v. Wartman.*]

"whatever kind, except, as is therein after excepted, and to de-
"mands of debts, bonds, penal and single bills, not exceeding
"the amount of 100 dollars." Now it is perfectly clear that a
demand for rent is a debt, and whether it is founded on a verbal
or written engagement, it falls under the denomination of a pro-
mise. Unless therefore such demand is enumerated in the ex-
ceptions to the jurisdiction of the justice by the legislature, it is
comprehended under the general words. Those exceptions are
specified in the 15th §, and consist of ejectments, replevins, ac-
tions on real contract for the sale or conveyance of lands and
tenements, and actions upon promise of marriage. Contracts
for rent are not excepted. An action of debt will unquestion-
ably lie for a sum certain. By the 14th section it is provided,
that if any persons sue for any debt or demand, made cognizable
by the act in any other manner than is directed thereby, they
shall not recover costs in such suit.

By the 12th section it is declared, that "the powers of justices
"of the peace shall extend to all cases of rent not exceeding
"100 dollars." But it has been objected, that the generality of
these words has been restrained by the subsequent phrases, so
far as to compel the landlord to set off the tenant's account; and
that the justice's power is confined to the settlement of the true
balance between him and his tenant. It seems passing strange,
*that the justice should be called on judicially to decide
*240] as to the sum due for rent, and all matters of dispute rel-
ative thereto, and yet should not be impowered to enter judg-
ment and issue execution thereon. This would not be favor-
able to the interests of landlords. "But the landlord may waive
"further proceedings before the justice, and pursue the method
"of distress." These are the words of the law. They give the
landlord an election. He may either waive or not waive further
proceedings before the justice. If he does waive, he may pur-
sue his remedy by distraining his tenant's goods. If he does
not waive, the consequence necessarily must be, the justice's
proceeding to judgment and execution, though the act does not
contain the same pointed provisions in this particular as the law
of 1st March, 1799. A twofold effect is produced by the ex-
pressions under consideration, varying the common law. First,
the suit before the justice shall not determine his election of
proceeding *pro hac vice* by distress also; and secondly, the ten-
ant may set off his just account. By the British decisions, there
can be no set off to the avowry justifying under a distress for
rent, because the distress is not an action, but a remedy without
suit. Bull. 181, 4to. ed. 177. It is submitted to the court,
whether the justice had not jurisdiction in this case.

The court were divided in their opinions. The chief justice
and YEATES held, that the justice had jurisdiction; SMITH and
BRACKENRIDGE held that he had no jurisdiction; but they also
declared, that as it did not appear by the execution that the

[Nailor v. French.]

same had issued for rent, the party was not relievable by this writ of *habeas corpus*, but that his proper remedy was by *certiorari*.

　The prisoner was remanded.

Cited in 104 Pa. 516 in support of the decision that under the act of March 20, 1810 (Purd. Dig. 849), allowing a tenant to defalcate or set off his just account against his landlord's claim for rent, before a justice of the peace, the landlord may appeal to the Common Pleas from the judgment of the justice.